UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------X
HELEN TESTAGROSE,

                Plaintiff,

- against -

THE NEW YORK CITY HOUSING
AUTHORITY and ALEXANDER SCOTT,[*]

                Defendants.
----------------------------------------------------------X

**MEMORANDUM & ORDER**

06-CV-0614 (RRM)(RML)

MAUSKOPF, United States District Judge.

In December 2003, Plaintiff Helen Testagrose was terminated from her employment with Defendant New York City Housing Authority ("NYCHA"). Testagrose now brings federal civil rights claims against NYCHA and NYCHA employee Alexander Scott, alleging gender discrimination pursuant to 42 U.S.C. § 1983 and the Equal Protection Clause of the Fourteenth Amendment. For the reasons set forth below, Defendants' motion for summary judgment is GRANTED and Plaintiff's claims are DISMISSED in their entirety.

**FACTUAL AND PROCEDURAL BACKGROUND**[1]

Beginning in February 1989, Testagrose was employed by NYCHA as a "Caretaker" of certain of its New York City housing developments. In 2003, Testagrose was working at

---

[*] As indicated in Plaintiff's opposition submissions, and as evident from the Third Amended Complaint, all claims against the previously named defendant Gerald Wheeler have been voluntarily dismissed. Accordingly, the caption is amended. United States v. Edwards, 241 F.R.D. 146 (E.D.N.Y 2007).

[1] Unless otherwise indicated, the facts set forth here, and in the Discussion section below, are uncontroverted and are culled from the summary judgment record, which record includes the following: Plaintiff's Third Amended Complaint, dated October 25, 2006 (the "Complaint"); Defendants' 56.1 Statement, dated December 4, 2007; Plaintiff's 56.1 Statement in Opposition, dated February 4, 2008; Declaration of Diane Johnson, sworn December 4, 2007, with exhibits; the Declaration of Scott Alexander, sworn December 3, 2007, with exhibits; the Declaration of Karen Brewster, sworn December 3, 2007, with exhibits (the "Brewster Declaration"); the Declaration of Donna M. Murphy, sworn December 3, 2007, with exhibits ("Murphy Declaration"); the Affirmation of Ambrose Wotorson in Opposition to Defendants' Motion for Summary Judgment, dated February 4, 2008, with exhibits; and the Supplemental Declaration of Donna M. Murphy, sworn March 21, 2008, with exhibits.

NYCHA's Albany Houses, a public housing complex in Brooklyn, New York. Defendant Scott was the Superintendent of Albany Houses from December 3, 2001 to October 22, 2003.[2] During that time, Scott's immediate supervisor was Albany Houses Development Manager Diane Johnson. Johnson is a non-party to this action and no allegations of discriminatory conduct have been asserted against her.

During the term of her NYCHA employment, Testagrose was the subject of four separate disciplinary hearings and numerous counseling memoranda for a variety of infractions, including lateness and poor job performance, documentation of which has been appended to the summary judgment record. On or about May 31, 2003, Testagrose was arrested outside of NYCHA's Glenwood Houses in connection with a domestic dispute, in which she was alleged to have vandalized a vehicle by pouring sugar into the fuel tank. Subsequent to that arrest, a consent search of what was reported to be Testagrose's vehicle revealed a loaded .25 caliber semiautomatic handgun, a quantity of marijuana, and glassine envelopes typically used in the packaging of drugs. Accordingly, Testagrose was charged with possession of a loaded handgun, possession of marijuana and drug paraphernalia, and criminal mischief. That incident was documented by NYCHA's Emergency Services Unit, as well as by New York City Police responding to the scene. On June 2, 2003, pursuant to NYCHA policy, that arrest documentation was forwarded to Testagrose's supervisor, Johnson.

Johnson testified that when she received the arrest documentation, NYCHA's headquarters was already aware of the incident. Thus, later on June 2, 2003, NYCHA's Human Resources Department faxed a suspension notice to Albany Houses for immediate service on

---

[2] At Albany Houses, Scott supervised two Assistant Superintendants to whom Caretakers, including Testagrose, reported. As such, it uncontroverted that Scott did not directly supervise Testagrose during his tenure as Albany Houses Superintendant.

2

Testagrose. Johnson testified that she personally served the suspension notice on Testagrose on June 2, 2003, as indicated by Johnson's handwritten notation on a file copy of that notice.[3]

The next day, June 3, 2003, Johnson, as Albany Houses Development Manager and per NYCHA policy, submitted a Request for General Trial to the Brooklyn Borough Management Office.[4] Johnson's Request for General Trial, pursuant to New York Civil Service Law § 75, indicated that the Request was motivated by the facts and circumstances surrounding Testagrose's recent arrest, although Testagrose's previous unauthorized absences and breaks were also cited as grounds for additional charges to be presented at the General Trial. The Request for General Trial was signed by Gloria Finkelman, Director for Brooklyn Borough Management Department, on June 4, 2003. Service of the disciplinary charges was made by certified mail on June 19, 2003.

Disciplinary charges dated June 16, 2003 set out the charges presented at Testagrose's hearing. The first charge was based upon the events surrounding her May 31, 2003 arrest, alleging that she (1) attempted to damage property by pouring sugar into the fuel tank of a vehicle owned by Lucius Girard, a fellow NYCHA employee and Testagrose's then-boyfriend, and (2) illegally possessed marijuana, drug paraphernalia, and a loaded handgun. Other charges

---

[3] Although Testagrose claims that notice of her suspension was served by Scott, not Johnson, a review of Testagrose's deposition testimony indicates that she has no independent recollection of the event. Her claim that Scott served the notice is largely based on her understanding of his supervisory role. For his part, Scott denies that he had any involvement in issuing or serving the suspension notice, a contention Johnson confirms. As stated above, it is Johnson's testimony that she, not Scott, preferred disciplinary charges against Testagrose and, further, that she personally served Testagrose with the notice. Accordingly, there is nothing in the record to suggest Scott's involvement in the events underlying this suit.

[4] In paragraph four of her summary judgment declaration, NYCHA Deputy Human Resources Director Karen Brewster describes the general trial request procedure as follows: "... [T]he Development Manager will recommend initiation of such proceedings through channels to the Department Director. If the Department Director concurs, she will refer such matter to the Director of Human Resources for action. If the Director of Human Resources concurs, she will forward the request for general trial to the General Counsel. The Employee Disciplinary Division of the Law Department then prepares written disciplinary charges to be served on the employee." By all indications, that process was followed here.

included Testagrose's improper work breaks, excessive lateness for work, and absence without leave on five dates.

Testagrose's General Trial was held before a Trial Officer on June 27, 2003. The record indicates that Testagrose was represented at that proceeding by Idina Holmes, Esq., counsel from the law firm of Meyer, Suozzi, English & Klein, P.C. Testimony was taken from Testagrose, Johnson, New York City Police Officer Charles Bacon, and Albany Houses Supervisor of Caretakers Russell Jackson. Scott denies testifying or otherwise participating at the General Trial. Indeed, there is no indication on the record that he did so, a fact that Testagrose does not dispute. After the hearing, the Trial Officer found Testagrose not guilty of the charges regarding possession of a gun, marijuana, or drug paraphernalia, finding insufficient evidence that Testagrose owned or controlled the vehicle where the contraband items were found; however, the Trial Officer found her guilty of attempting to damage Girard's vehicle. Additionally, Testagrose was found guilty of taking improper work breaks and being absent from work without leave on at least five occasions. After reviewing Testagrose's record of prior disciplinary hearings and related counseling memoranda, the Trial Officer recommended that her employment be terminated.

The Trial Officer's findings were adopted by NYCHA's Board, and Testagrose was terminated from her employment at NYCHA on December 12, 2003. Testagrose appealed her termination to the New York City Civil Service Commission ("CSC"). The CSC affirmed by notice dated July 7, 2004.

Testagrose now brings claims of gender discrimination under the Equal Protection

Clause,[5] alleging (1) that the commencement of disciplinary action was in furtherance of a NYCHA policy to terminate all female employees arrested on criminal charges, and (2) that Scott preferred charges against her despite knowing, by virtue of his management position, that such charges were historically levied in a gender-biased manner.

To support her equal protection claims, Testagrose first alleges that certain male Caretakers were spared termination under similar circumstances; i.e., that those employees were spared disciplinary proceedings or were otherwise favorably treated in connection with arrests. Second, Testagrose alleges gross irregularities in the course of her General Trial, including, among other things, the Trial Officer's reliance on hearsay testimony, which she argues is indicative of discriminatory pretext.[6]

## SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate only where there exists no genuine issue of material fact, and the onus to establish the absence of such factual issues falls squarely upon NYCHA as the moving party. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Upon such showing, the onus shifts to Testagrose to present evidence sufficient to satisfy every element of the claim. In so doing, Testagrose is required to "go beyond the pleadings" and "designate specific facts showing that there is a genuine issue for trial." Id. at 324. In assessing the record to determine

---

[5] This matter has been the subject of no less than three amended complaints through which Testagrose has asserted a host of claims based upon conduct reaching back nearly a decade. The Third Amended Complaint (the "Complaint"), the latest pleading, withdraws the majority of those claims and renders irrelevant most of their supporting factual allegations. As relevant to the instant motion, two indistinguishable causes of action remain. The first states in pertinent part: "By altering the terms, conditions and privileges of plaintiff's municipal employment, because of her gender, all defendants violated the Equal Protection Clause of the Fourteenth Amendment as made actionable through 42 U.S.C. Section 1983." The second states in pertinent part: "By altering the terms and conditions and privileges of plaintiff's municipal employment in a sexually disparate manner, and without any rational basis for doing so, all defendants, acting under color of state law, violated the Equal Protection Clause of the Fourteenth Amendment as made actionable through 42 U.S.C. Section 1983."

[6] It is uncontroverted that, at all times relevant to this action, NYCHA had anti-discrimination policies in place, including policies prohibiting discrimination on the basis of gender.

whether there is a genuine issue to be tried as to any material fact, the Court is required to resolve all ambiguities and draw all permissible factual inferences in Testagrose's favor. Anderson v. Liberty Lobby, Inc., 47 U.S. 242, 249-50 (1986).

In discrimination cases, the merits typically turn upon an employer's intent, necessitating abundant caution in granting summary judgment for the employer. Holcomb v. Iona Coll., 521 F.3d 130, 137 (2d Cir. 2008). Naturally, where an employer has acted with discriminatory intent, direct evidence of that intent will only rarely be available, thus "affidavits and depositions must be carefully scrutinized for circumstantial proof, which, if believed, would show discrimination." Id. (quoting Gallo v. Prudential Residential Servs., Ltd. P'ship, 22 F.3d 1219, 1224 (2d Cir. 1994)). Even in the discrimination context, however, a plaintiff must provide more than conclusory allegations to resist a motion for summary judgment. Id.

## SECTION 1983 DISCRIMINATION STANDARD

In the § 1983 discrimination context, claims alleging violations of Fourteenth Amendment Equal Protection rights by an adverse employment action are assessed under the oft-cited McDonnell Douglas balancing test.[7] McDonnell Douglas v. Green, 411 U.S. 792 (1973); Back v. Hastings on Hudson Free Sch. Dist., 365 F.3d 107, 123, (2d Cir. 2004) (applying McDonnell Douglas to § 1983 claim of gender discrimination violative of Fourteenth Amendment Equal Protection). Under McDonnell Douglas, in order to prove a *prima facie* case of discrimination, the plaintiff must demonstrate that (1) she is within a protected group; (2) she

---

[7] Section 1983 itself creates no substantive rights; it provides only a procedure for securing redress for the deprivation of rights established elsewhere, see City of Oklahoma City v. Tuttle, 471 U.S. 808, 816 (1985); Andrews v. City of New York, No. 01-CV-7333, 2004 U.S. Dist. LEXIS 30290, at *23 (E.D.N.Y. Nov. 22, 2004), in this case, the Fourteenth Amendment. Section 1983 provides in pertinent part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State ... subjects, or causes to be subjected, any citizen of the United States ... to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

6

was qualified for the position in question; (3) she was terminated; and (4) the termination occurred under circumstances giving rise to an inference of discrimination. Shumway v. United Parcel Serv., Inc., 118 F.3d 60, 63 (2d Cir. 1997). The burden of establishing a *prima facie* case is de minimis. Chambers v. TRM Copy Ctrs. Corp., 43 F.3d 29, 36-37 (2d Cir. 1994).

Once the plaintiff has established a *prima facie* case of discrimination, the burden shifts to the defendant to produce evidence "that the adverse employment actions were taken 'for a legitimate, nondiscriminatory reason." St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 507 (1993). Despite this shift of the burden of production to the defendant, "[t]he ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff." Texas Dep't of Cmty. Affairs v. Burdine, 405 U.S. 248, 254 (1981).

If the defendant provides evidence of a legitimate nondiscriminatory reason for its action, the burden returns to the plaintiff to show by a preponderance of the evidence that the reasons advanced by the defendant are a pretext for discrimination. Burdine, 450 U.S. at 253. A plaintiff opposing a motion for summary judgment "must produce sufficient evidence to support a rational finding that the legitimate, nondiscriminatory reasons proffered by the employer were false," Woroski v. Nashua Corp., 31 F.3d 105, 110 (2d Cir. 1994), and "that the defendant's employment decision was more likely than not based in whole or in part on discrimination." Stern v. Trs. of Columbia Univ., 131 F.3d 305, 312 (2d Cir. 1997).

While courts are to be "particularly cautious" about granting summary judgment to employers in cases where the discriminatory intent of the employer is contested, Schwapp v. Town of Avon, 118 F.3d 106, 110 (2d Cir. 1997), "[i]t is now beyond cavil that summary judgment may be appropriate even in the fact-intensive context of discrimination cases," Abdu-

Brisson v. Delta Air Lines, Inc., 239 F.3d 456, 466 (2d Cir. 2001). In addition, although district courts must pay careful attention to affidavits and depositions which may reveal circumstantial proof of discrimination, see Gallo, 22 F.3d at 1224, courts are not to "'treat discrimination differently from other ultimate questions of fact,'" Abdu-Brisson, 239 F.3d at 466 (quoting Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 148 (2000)). Thus, although it is difficult for courts to ascertain discriminatory intent, courts must "carefully distinguish between evidence that allows for a reasonable inference of discrimination and evidence that gives rise to mere speculation and conjecture." Bickerstaff v. Vassar Coll., 196 F.3d 435, 448 (2d Cir. 1999).

## DISCUSSION

Testegrose's allegations of Equal Protection violations are predicated on conclusory allegations of gender animus. Upon a review of the record, Testagrose does not and cannot establish any discriminatory motive, either in the preferment of disciplinary charges against her or in the conduct of her General Trial. In sum, she fails to allege facts sufficient to give rise to the necessary inference of discrimination required to establish a *prima facie* case under the McDonnell Douglas requirements. Even assuming, however, that a *prima facie* case was adequately established, Testagrose fails to rebut NYCHA's non-discriminatory basis for her termination. Finally, she fails to adequately allege Scott's participation, in a manner sufficient to establish a viable claim for individual liability. As such, and for the reasons below, Testegrose's claims alleging § 1983 liability against both NYCHA and Scott are dismissed.

## A. Defendant NYCHA[8]

### 1) *Prima Facie* Case

In opposition to summary judgment, Testagrose presents comparison cases allegedly showcasing NYCHA's lenient disciplinary treatment of certain male employees: Brooks, Everett, Martino, Newton, Robinson, Taylor, Windley, and Woodson.[9] Upon closer examination, these comparison cases support neither a *prima facie* case of disparate treatment nor a rationale for finding that NYCHA's basis for terminating Testagrose was false or pretextual.

Although comparisons between a plaintiff and other employees can often establish actionable discrimination, for such comparisons to be relevant, the plaintiff and the comparator employees must be similarly situated. Cruz v. Coach Stores, Inc., 202 F.3d 560, 567-68 (2d Cir. 2000) (holding comparison-based claim cannot consist solely of general assertions that racial animus existed because nonmembers of plaintiff's protected class were treated more favorably, but must show that those nonmembers were similarly situated); Lieberman v. Gant, 630 F.2d 60, 68 (2d Cir. 1980). In this case, they are not.

---

[8] To prevail on a Section 1983 claim against NYCHA, a municipal entity, Testagrose must identify a municipal policy or custom that caused her injury. Monell v. Dep't of Soc. Servs., 436 U.S. 658, 694 (1978). An actionable custom exists where the applicable practice is "so widespread as to have the force of law." Bd. of County Comm'rs v. Brown, 520 U.S. 397, 404 (1997) (citing Monell, 436 U.S. at 690-91). Such a custom need not have formal approval, but Testagorse must demonstrate the existence of a permanent and well settled practice. See Davis v. City of New York, 228 F. Supp. 2d 327, 337 (S.D.N.Y. 2002) (citing City of St. Louis v. Praprotnik, 485 U.S. 112, 127 (1988)). For the reasons discussed throughout, this Court finds that no reasonable view of the evidence supports any triable inference that NYCHA engaged in pattern or practice of discriminatory behavior, either by providing favorable treatment to similarly situated male employees, or by short-circuiting Testagrose's disciplinary process rights. As Testagrose fails to show any basis for imposing municipal liability under a Monell theory, NYCHA's motion for summary judgment on that claim is granted.

[9] As a threshold matter, NYCHA documents show no record of a Caretaker named Anthony Robinson. Further, employees Newton, Taylor, and Windley are not Caretakers, and Testagrose, for reasons sufficient to her, abandons any further discussion of them – thus their employment histories are not considered here.

Of the male Caretakers discussed in the parties' summary judgment submissions, only Martino and Everett were subject to discipline for an arrest. Unlike Testagrose's case, Martino was arrested for marijuana possession – not for possession of a loaded handgun or for allegedly vandalizing a NYCHA employee's vehicle on NYCHA grounds. Notwithstanding the substantially different circumstances of his arrest, Martino, like Testagrose, *was* subject to disciplinary charges by the manager of the housing development where he worked, and a Request for General Trial was made by NYCHA's Human Resources director. Rather than facing termination however, Martino voluntarily resigned his employment on the day of his General Trial.

As relevant here, Testagrose fails to allege disparate treatment with respect to either (1) NYCHA's process for levying charges against Martino or (2) requesting a General Trial against him. Instead, she complains only that Martino was favorably "allowed" to resign his position, rather than proceeding to General Trial. The relevance of that fact to a claim of gender discrimination is not clear. That Martino chose, voluntarily, to resign his position when faced with serious disciplinary charges and the prospect of a General Trial does not reasonably suggest disparate treatment. There is no indication that Testagrose was not equally free to resign her position rather than face termination. That she elected to defend herself at General Trial rather than resign shows merely that she availed herself of a right to process – a process commenced by the same means and mechanisms afforded to other NYCHA employees. Accordingly, her reference to Martino's case is insufficient to raise a triable inference of gender discrimination.

Testagrose's comparison to Everett is also inapt. Like Testagrose, Everett was also subject to discipline following an arrest[10] and, although his circumstances are more closely relatable to Testagrose's case, they are nonetheless distinguishable. In September 2004,

---

[10] Although Testagrose claims that Everett was arrested twice, she identifies no evidence of a second arrest.

disciplinary charges were preferred against Everett for being absent from work without leave. That absence was due to Everett's incarceration for violating an order of protection. Thus, although Everett too was arrested, unlike Testagrose's case, his arrest did not implicate gun possession, vandalism, or drug-related charges. In any event, Everett too was subjected to the preferment of disciplinary charges and a Request for General Trial. Unlike Testagrose, however, Everett voluntarily pled guilty to those disciplinary charges, and as a result, served a 30-day suspension and a two-year probationary evaluation period.

Although Everett was suspended, not terminated, the documentary evidence supports NYCHA's contention that Everett's employment history – though checkered – was "cleaner" than Testagrose's. Further, Everett's discipline was meted out in connection with a voluntary guilty plea, not based upon the outcome of a General Trial. In the absence of any specific allegation that she was denied a similar opportunity to plead guilty, Testagrose and Everett cannot be deemed similarly situated.

In sum, Testagrose's comparison evidence does not suggest that she was disciplined more severely than similarly situated male employees. To the contrary, as stated above, the record establishes that, as to the only comparators arrested, NYCHA preferred disciplinary charges and requested a § 75 General Trial against both. That these male employees were not terminated can be explained respectively by Martino's resignation and Everett's guilty plea, situations that differ substantially from Testagrose's case. As such, the comparison evidence provided is insufficient to establish *prima facie* evidence of gender discrimination, and summary judgment in NYCHA's favor is therefore appropriate.

2) Non-discriminatory Basis for Termination

Although Testagrose's failure to establish a *prima facie* case of discrimination renders further analysis unnecessary, see Gilinsky v. Columbia Univ., 488 F. Supp. 1309, 1316 (S.D.N.Y. 1980), this Court also finds that, even if a *prima facie* case of discrimination were established, NYCHA has sustained its burden to show that Testagrose's dismissal was predicated upon a legitimate, nondiscriminatory basis. In this case, NYCHA has demonstrated that its decision to terminate Testagrose's employment was predicated exclusively upon the independent recommendation of a Trial Officer following a § 75 General Trial. The Trial Officer concluded that Testagrose's attempts to vandalize a vehicle, coupled with her long history of attendance violations and other disciplinary issues, warranted her immediate termination.

As the Second Circuit held in Collins v. N.Y.City Transit Auth., 305 F.3d 113, 118 (2d Cir. 2002), the "decision of an independent and unbiased arbitrator based on substantial evidence after a fair hearing" has significant probative weight regarding the requisite "causal link between an employee's termination and the employer's [alleged] illegal motive." See also Munafo v. Met. Transp. Auth., No. 98-CV-4572, 2003 WL 21799913, at *26 (E.D.N.Y. Jan. 23, 2003). In such circumstances, the aggrieved employee is not barred from bringing an action in federal court alleging discriminatory termination, see Alexander v. Gardner-Denver Co., 415 U.S. 36, 45-60, 60 n.21 (1974), but to survive summary judgment, the plaintiff "must present strong evidence that the decision of the independent tribunal was wrong as a matter of fact," e.g., there exists new evidence not previously considered, or "that the impartiality of the proceeding was somehow compromised." Dolson v. N.Y. State Thruway Auth., No. 01-CV-0610, 2003 WL 1090267, at *3 (N.D.N.Y. Mar. 12, 2003). Neither showing is made here.

12

To suggest pretext, Testagrose does not claim any discriminatory motivation by the Trial Officer, but claims only that the General Trial proceeding was procedurally defective. In support, Testagrose complains that the Trial Officer relied on hearsay statements of NYPD officers and improperly considered Testagrose's past personnel issues in violation of her due process rights. These claims are unavailing. First, Testagrose's Due Process claim was previously raised in her Second Amended Complaint, and was expressly dismissed by our predecessor Court (Amon, J.) on October 24, 2006, see Docket No. 21. Such claims therefore need not be considered further. Second, even had Judge Amon not dismissed Testagrose's Due Process claims, this Court would give preclusive effect to the Civil Service Commission's appellate determination that, upon "careful review of the testimony adduced ... and based on the record," the Trial Officer's determination and NYCHA's actions were devoid of reversible error. Burka v. N.Y. City Transit Auth., No. 85-CV-5751, 1993 WL 372272, at *1 (S.D.N.Y. Sept. 13, 1993).

Finally, even upon a *de novo* review, Testagrose's Due Process claims are unsupported by the record. Testagrose fails to cite any authority for the proposition that a § 75 General Trial Officer may not consider hearsay evidence or that such administrative proceedings must otherwise be conducted in accordance with the strict evidence rules typically applicable to more formal court proceedings. Likewise, there is nothing to indicate that the Trial Officer's reference to past employment conduct cannot inform a termination recommendation. Indeed, NYCHA policy is expressly to the contrary. Moreover, there is no dispute that Testagrose availed herself of the opportunity to be represented by counsel at the General Trial, or that an opportunity to cross-examine the witnesses (including the arresting officer), was provided. In fact, it appears that her opportunity to defend was successful, at least in part, as the Trial Officer determined that

NYCHA disciplinary charges relating to the possession of a handgun, marijuana, and drug paraphernalia were not adequately established. More importantly, there is no suggestion that the conduct of the General Trial, even if defective, was in any way motivated by discriminatory animus sufficient to create a triable nexus between the allegedly defective procedures and Testagrose's sole remaining claim of gender bias. For all of these reasons, Testagrose has failed to establish that NYCHA's basis for terminating her employment was pretextual. As such, summary judgment in NYCHA's favor is appropriate.

### B. Defendant Alexander Scott

Testagrose fails to establish Scott's personal involvement in the alleged deprivation of her rights. Her claim against Scott must therefore fail. See Back v. Hastings on Hudson Union Free Sch. Dist., 365 F.3d 107, 122 (2d Cir. 2004) (holding that a defendant's personal involvement in the alleged constitutional deprivation is a necessary requisite to establishing personal liability under § 1983); Dolson, 2003 WL 1090267 at *3 (dismissing an individual defendant, finding, "Plaintiff offers no evidence or argument to support the conclusion that the individual Defendants were personally involved in either the decision to seek his termination, the ultimate decision to terminate his employment, or the creation and delivery of the allegedly defective disciplinary charge letters.")

In this case, the claim for personal liability against Scott is predicated solely on Testagrose's testimony that he preferred the disciplinary charges against her, and that he served her with notices of her suspension and General Trial. The record supports neither contention. Thus, failing the necessary prerequisite of actual participation, her claims against Scott are dismissed. Upon a review of the record, it does not appear that Testagrose has any independent knowledge or recollection that Scott preferred disciplinary charges against her, or that he actually

served her with the notice; her belief that he did so is predicated only on her general understanding of his responsibilities as a NYCHA supervisor. That alone is an insufficient basis on which to impose individual liability. See Reynolds v. Goord, No. 98-CV-6722, 2000 WL 235278, at *7 (S.D.N.Y. Mar. 1, 2000). In any event, as stated above at n. 4, Johnson testified that she, not Scott, preferred charges against Testagrose, as required by NYCHA policy. Johnson further testified that she, not Scott, effected service. As Testagrose proffers no evidence to contradict this testimony, her claims against Scott are dismissed.

## CONCLUSION

For the reasons set forth above, defendants' motion for summary judgment on Testagrose's 42 U.S.C. §1983 claims for gender discrimination is GRANTED. Testagrose's claims are DISMISSED in their entirety. The Clerk of the Court is directed to close this case.

SO ORDERED.

Dated: Brooklyn, New York
March 31, 2009

_____
ROSLYNN R. MAUSKOPF
United States District Judge